Hillsborough, }
March 3, 1914. }

## HARVEY POLLARD & a. *v.* HARRY A. GREGG & a.

A majority of the members of the house of representatives who are qualified to act constitute the quorum requisite for the transaction of legislative business.

A legislative enactment is not invalid merely because a roll-call of the house of representatives taken just prior to its passage disclosed the absence of a quorum, especially when the journal does not show that any member objected on the ground that the body stood adjourned, or that the speaker declared an adjournment.

Where a statute does not expressly repeal existing laws upon the same subject and is not clearly designed as a substitute therefor, a legislative intent to restrict its repealing power to inconsistent provisions of prior acts is presumed; and this presumption is strengthened when the repeal is so limited by the express language of the later enactment.

The act to unify the laws relating to the establishment of police commissions (Laws 1913, c. 148) was not intended to repeal *in toto* all earlier statutes creating such commissions for sundry municipalities throughout the state.

The tenure of office of the police force of Nashua, appointed in accordance with the provisions of chapter 208, Laws 1891, was not terminated by the enactment of chapter 148, Laws 1913.

PETITION, for a writ of *certiorari*. Trial by the court. Transferred from the September term, 1913, of the superior court by *Kivel*, J.

The defendants are the police commissioners of the city of Nashua, appointed under chapter 148, Laws 1913. The plaintiffs are the police officers of the city appointed by the board of police commissioners who preceded the defendants in office. The defendants assumed the duties of their office on September 1, 1913, and at once notified the plaintiffs that they would not be reappointed and ordered them to leave at headquarters all the property they had belonging to the police department. The plaintiffs reported for duty for several days, but were not allowed to engage in the service,

and afterward notified the defendants that they were willing at any time to perform the work of police officers. Subject to exception, the court ruled, in accordance with the defendants' contention, that the notice to the plaintiffs operated to remove them from office.

*Wason & Moran, Doyle & Lucier,* and *George F. Jackson (Mr. Wason* orally), for the plaintiffs.

*Remick & Jackson (Mr. Jackson* orally), for the defendants.

WALKER, J. The plaintiffs' first position is that the statute under which the defendants seek to justify their acts (Laws 1913, c. 148) is of no validity for the alleged reason that it was not legally or constitutionally enacted. It is insisted that the requisite quorum was not present in the house of representatives when the vote was taken upon the question of its passage. It appears that 405 representatives were elected, and no question is made that that was the number of members of which the house might be composed under the law. It further appears, and is conceded, that one of the men elected died before the legislature convened, that the vacancy thus caused was not filled, and that of those who qualified upon the organization of the house, three died, whose places were not filled, one resigned his office, and one was expelled, before the vote upon the passage of the statute in question. The active membership of the house was thus reduced to 399 members. An examination of the house journal shows that 201 members voted upon the roll-call, when the bill was put upon its passage, and that the speaker made declaration that the bill had passed. Upon this state of facts, it is claimed that it conclusively appears that no quorum was present and that under the constitution the vote was a nullity. This contention is based upon the proposition that a quorum consists of a majority of all the members elected; and that as 405 were elected, a quorum must consist of at least 203. If this contention is sound, it is apparent that the statute was not legally enacted.

On the other hand, the defendants contend that a quorum consists of a majority of the actual membership of the house at the time the vote is taken; and that as six vacancies had occurred, the membership of the house, from which a quorum is to be reckoned, was 399, of which number 200 would be a majority and a quorum. Upon this theory the bill became a law, as 201 voted when the roll was called upon its passage. The question is: which contention is sound as a matter of law?

It is provided in the constitution (Part II, *art.* 19): "A majority of the members of the house of representatives shall be a quorum for doing business, but, when less than two thirds of the representatives elected shall be present, the assent of two thirds of those members shall be .necessary to render their acts and proceedings valid." A clear distinction is here made between "the members of the house" and "the representatives elected." The former expression refers to those members elected who are qualified and recognized as constituting the body of the house for the transaction of business, and does not include deceased persons, or persons who have resigned, or who have been removed since their election as representatives. The framers of the constitution could not have used language more expressive of an intention to provide, that a quorum of the house should consist of a majority of the members elected, who, when the point is raised, are not disqualified to act as members. To hold otherwise would be, not to construe the language of the constitution, but to give it a forced meaning neither necessary nor reasonable. Incidentally, it may be noted that the national house of representatives construes the constitution of the United States relating to this question in a similar way. See 4 Hinds' Precedents, *ss.* 2885-2890.

The claim that when this bill was declared passed the house was not in session, for the reason that just before its passage there was a roll-call on a motion to adjourn which shows that no quorum was present, cannot be sustained. If it is assumed that the journal shows that fact (a point upon which no opinion is expressed), we are referred to no constitutional provision or any rule of the house that declares that in such an event the house stands automatically adjourned without even a declaration of the speaker to that effect. Cush. Leg. Ass., *s.* 361. While it is true that under the constitution no business of a legislative nature could be done, it does not necessarily follow that an adjournment ensues. If before there is a declaration of adjournment a quorum is secured by the arrival of members who were absent, there is no constitutional reason why the session might not continue for the transaction of business; and, as we understand, this is often the method of procedure. And especially must this be so when, as in this case, the journal does not show that any member raised the point, or objected that the house stood adjourned, or that the speaker declared an adjournment. As the only question before us on this branch of the case is one of constitutional law (*United States* v. *Ballin,* 144 U. S. 1, 5), and as

it does not conclusively appear from the journal that that instrument was violated in the passage of the statute under consideration, it must be regarded as having been properly enacted and as being a valid statute.

The remaining question relates to the construction to be given to the statute. The plaintiffs' position is that as they were appointed by the board of police commissioners of the city of Nashua in accordance with the provisions of chapter 208, Laws 1891, and as their tenure of office under section 4 of the act continues "during good behavior and while competent to discharge the duties of the office," they still hold their positions, not having been legally removed therefrom and not having resigned their commissions. It is conceded by the defendants, who constitute the board of police commissioners appointed under chapter 148, Laws 1913, that the plaintiffs were not removed in accordance with the statute of 1891, which gave the commissioners "the right to remove any member of the police force at any time for good and sufficient cause and after a due hearing" (s. 4), nor in accordance with the statute of 1913, which is substantially the same (s. 6); but they contend that the statute of 1891 was repealed by the later statute and consequently that the plaintiffs ceased to be police officers by legislative enactment.

There was no express repeal. The last section of the act of 1913 provides that "All acts or parts of acts inconsistent with this act are hereby repealed and this act shall take effect August 1, 1913." If this section is to be given due weight, it is only such previous statutory provisions as are inconsistent with the new statute that were intended to be repealed. The question of a repeal depends upon a reasonable construction of the two acts. In such particulars, if any, as they are not inconsistent, both statutes are in force, for such seems to be the evident purpose of the legislature of 1913, clearly indicated by the language used. It is true that by section 2 of the later statute provision was made for a new police commission in each of the municipalities specified, including the city of Nashua. This is practically conceded by the plaintiffs. Section 4 is as follows: "It shall be the duties of said police commissioners to appoint such police officers, constables, and superior officers as they may in their judgment deem necessary, and to fix their compensation." Section 6 provides that "the police commissioners shall have authority to remove any officer at any time for just cause and after due hearing, which cause shall be specified in the

order of removal." There is no provision that the appointees of the old board of commissioners shall cease to be police officers on August 1, 1913, when the act took effect, while the provisions quoted furnish little evidence that such was the purpose of the legislature. The act does not in terms specify what the tenure of office of policemen shall be, and in this respect it is clear that section 4 of the former act, which defines their tenure of office, was not expressly repealed by the later statute. The term of their employment is unchanged, because there is no inconsistency between the two acts in this respect. They hold "during good behavior and while competent to discharge the duties of the office," unless removed as provided in the statute. The absence of any express language indicating a purpose to revoke and terminate the official authority of the policemen then legally occupying that position in Nashua, in connection with the fact that no necessary inconsistency arises upon this point by giving effect to both of the statutes referred to, is convincing evidence that the legislature did not intend, by the mere enactment of the statute of 1913, to deprive the plaintiffs of their official positions.

This conclusion is rendered practically incontrovertible when the effect of a contrary holding is considered. If the defendants' position is sound, it follows that the plaintiffs ceased to be police officers August 1, 1913, when the act took effect. Section 2 provides for the appointment of a police commision "on or before September 1, 1913." From August 1 until the new commissioners were appointed and qualified, there would be no police force in Nashua, if the plaintiffs' title to their office was terminated when the act took effect. It is inconceivable that the legislature provided for such a result which might continue for several weeks. Explicit and unambiguous language would be necessary to justify such a conclusion. The claim that the plaintiffs' term of office continued only until the new board of commissioners was appointed, or until the commissioners attempted to appoint others in their place, is not supported by the language of the act, which does not in terms refer to the terms of office of existing policemen, nor by necessary implication, nor by apparent inconsistency in the provisions of the old and the new act. The question is, not what views upon the point some members of the legislature of 1913 may have entertained, but what is the effect and meaning of the language of the act finally ratified and adopted by the legislature. From a comparison of the language of the two acts in its relation to the

title of the plaintiffs to their office, and in view of the resulting abolishment of the police forces, not only in Nashua, but in several other cities of the state as soon as the act took effect, if the defendants' construction were the true one, it is apparent that no repeal upon the point in question was intended. Except where the acts are inconsistent in their operation, the provisions of the former act are in force.

But it is argued that such a conclusion is based upon a narrow and technical construction which overlooks or disregards the primary purpose of the legislature of 1913, which, it is claimed, was to revise and consolidate the previous statutes relating to police commissions. If such was the purpose, it may be conceded that the former statutes were repealed by the later one *in toto. Boston Ice Co. v. Railroad, ante,* 6; *Hillsborough County* v. *Manchester,* 49 N. H. 57, 60. The question, however, is one of legislative intention found as a fact from competent evidence. Did the legislature intend to substitute the last statute for all the special acts passed at different times, creating police commissions in the cities of Manchester, Nashua, Portsmouth, Laconia, Somersworth, Dover, and Berlin, and in the town of Exeter? The application of the act is specifically limited to these municipalities, which are the only ones having police commissions.

The defendants' argument rests on the proposition that the existing special statutes establishing police commissions in the several places mentioned are dissimilar in many respects, and that it seemed desirable to establish a single statute covering the subject in all its phases in the place of eight distinct statutes; and the title of the act is referred to as evidence of such a purpose. So far as there is a conflict in the statutory provisions, it is clear that the later statute governs; but where there is no conflict, it is claimed that the purpose to substitute one statute for the others results in an absolute repeal of the latter in all respects; so that in this case the plaintiffs' title as police officers terminated when the act of 1913 took effect, even though the language of the act does not lead to that result. The title of chapter 148, Laws 1913, is "An act to unify the laws relating to the establishment of police commissions." That the act in section 2 did "unify" or change the previous laws (Laws 1891, *c.* 208; Laws 1893, *cc.* 182, 202; Laws 1895, *cc.* 162, 188, 205; Laws 1901, *c.* 234; Laws 1903, *c.* 189; Laws 1905, *c.* 160), in regard to the time of the appointment of the commissioners by the governor and in regard to their terms of service, is not doubted.

The commissions as thus established· are similar or uniform. In section 3, the governor with the consent of the council may remove a commissioner, apparently without limitation, while in the former statutes the power of removal could only be exercised after a hearing and for cause. In section 4, the commissioners are authorized to appoint such police officers as they deem necessary and to fix their compensation; this is a material change from the former acts, which designated the number of police officers that might be appointed, and in most of them provided for their compensation in some other way. In the respects thus indicated, changes were made. But the four remaining sections introduce no material changes, being in effect reënactments of similar provisions contained in the special acts. Many important provisions found in the former statutes are not included in the statute of 1913, as, for instance, the provisions as to the tenure of office of police officers, in regard to the organization of the boards of commissioners with a chairman and clerk who shall keep a record, and in regard to the commissioners making reports of their proceedings to the governor and the mayors of the cities. If the act is in the nature of a revision, if it was intended as a ·substitute for all other enactments on the subject of police commissions, these provisions were repealed; but the evidence from which such a conclusion is to be drawn is slight and far from convincing. "To unify the laws relating to the establishment of police commissions" does not necessarily presuppose a purpose to abolish or repeal all the provisions of those laws which are not in conflict with the provisions of the new law; for that phrase may as well indicate a purpose to unify the laws by repealing such of them as are inconsistent with the new statute. And that such was the intention of the legislature is supported by the last section of the act, providing that "All acts or parts of acts inconsistent with this act are hereby repealed." There is little, if any, admissible evidence that in voting for the passage of this statute the legislators understood that they were thereby repealing laws that did not conflict with, and that were in fact consistent with, the proposed statute. The absence of express language that the existing laws were repealed calls for some explanation, in view of the express statement that inconsistent acts are repealed, before it can reasonably be found, under the circumstances, that the former statutes were entirely superseded by the subsequent one.

When the fact is found that a new act is intended to be a substitute for all former statutes upon the same subject, a provision

that inconsistent statutes are repealed cannnot be deemed sufficient evidence that the general purpose of the act is thus limited and restrained in its operation.    It might then be said to be unimportant "When a statute revises the whole subject of a former one and is clearly designed as a substitute, the former law is repealed although no express terms to that effect are used." *Boston Ice Co.* v. *Railroad, supra,* 17.   But substantially all the authorities hold that the purpose to revise the whole subject must clearly appear.   *State* v. *Wilson,* 43 N. H. 415, 419; *Hillsborough County* v. *Manchester, supra; Zickler* v. *Trust Co.,* 104 Tenn. 277; 1 Suth. Stat. Con., s. 269; End. Stat., s. 205.   If it does not so appear, the presumption is that the repeal is confined to inconsistent statutes, which presumption is rendered more probable when the new act uses language expressly limiting the repeal to such statutes, and that presumption is not overcome by the evidence in this case.

Further evidence that the statute of 1913 was not intended to be a complete substitute for the former statutes upon the subject of police commissions is furnished by a brief examination of a few of the provisions of those statutes.   Chapter 188, Laws 1895, created a board of police commissioners for the town of Exeter.   In section 3, it was provided that the commissioners "shall have the power to make the regulations now posssesed by the police officers of a town under the provisions of section 5, chapter 249, of the Public Statutes"; that is, certain police regulations in regard to the use of streets and the time of closing saloons and restaurants at night, etc. The act of 1913 is silent upon this subject; but if it entirely repealed the law of 1895, it would seem that no authority exists by which such regulations can be made in the town of Exeter, since "the repeal of an act shall not revive any other act which has been repealed."    P. S., c. 2, s. 37.

A board of police commissioners for Manchester was created by chapter 202, Laws 1893, and section 6 authorizes the mayor, "in case of tumult, riot, or violent disturbance of public order,  . . . to assume control for the time being of the police of said city." Was this authority intended to be abrogated by the passage of the act of 1913?

By chapter 189, Laws 1903, a police commission for Dover was established.   Section 4 fixes the salary of the police justice of that city.   It is hardly probable that the legislature intended by the new act to abolish that provision and leave the evidence of it to inference and conjecture.   And as bearing on this phase of the question, the

effect of a repeal, August 1, of all the former statutes, upon the police forces of the several municipalities covered by the act, which has already been discussed, is most persuasive evidence that the act was not intended to be a substitute for all existing statutes relating to police commissions.

In view of all the evidence having a legitimate bearing upon the question, it cannot be found that it clearly appears that the existing police commission laws were intended to be abolished *in toto* by the enactment of 1913. If such had been the purpose, it would have been an easy matter to use language unequivocally expressive of that purpose. The absence of such language and the presence of language expressing a purpose to repeal only inconsistent laws are significant facts bearing upon the question whether it clearly appears that a revision or substitution was intended. The result is that the plaintiffs are still police officers of the city of Nashua.

*Exception sustained.*

PEASLEE and PLUMMER, JJ., dissented: the others concurred.