Concord District Court
No. 83-143

*In re* ADAM E.

August 9, 1984

*Michael M. Burke*, of Concord, by brief and orally, for the appellant, Mary B.

*James R. Anderson*, of Pittsfield, by brief and orally, for the respondent, the New Hampshire Division of Welfare.

SOUTER, J.   The Concord District Court found Adam E. to be a neglected child under RSA chapter 169-C (Supp. 1983) and awarded his custody to the New Hampshire Division of Welfare under RSA 169-C:19, I(b) (Supp. 1983), subject to an order allowing his mother to visit with him. In response to a later motion of the division of welfare, the District Court (*Robbins*, J.) vacated the portion of the earlier order permitting visitation. Under RSA 502-A:17-a the district court has now transferred two claims that it erred in so doing. We find the order deficient in its present form and remand.

In earlier proceedings the district court received evidence that the child's mother was a schizophrenic unable to care for him. In 1980, the court divested the mother of the child's custody on grounds of neglect, but authorized her to visit with him. RSA 169-C:19, I(b) and I(a)(5)(ii) (Supp. 1983). She made some visits in the following year, but when she increased their frequency the child began to react to his mother with such psychological and physical disturbance that the welfare division petitioned the district court to "discontinue visitation and . . . change dispositional order." The court did so after

hearing, in an extensive order that included the sentence that "[v]isitation, as earlier ordered by the Court is hereby TERMINATED."

Although the child's mother claims on two grounds that the district court erred in issuing the order, there is only one issue in this case: does RSA chapter 169-C (Supp. 1983) authorize a district court to terminate unconditionally a mother's right to visit with her child? The mother takes the position that it does not and that the court must limit the duration of such an order and set conditions under which the mother may regain the right of visitation.

■ In support of her position she argues that the order in question here is an order of protection under RSA 169-C:19, I(a)(5) (Supp. 1983). That section provides in part that "[a]n order of protection may set forth reasonable conditions of behavior to be observed for a specified time by . . . a parent." From the permissive language, "may set forth," she urges us to infer a mandatory obligation to limit and condition the order. We will not adopt such an eccentric construction. RSA 21:2.

■ Nonetheless, RSA 169-C:21, II (Supp. 1983) supports the mother's position at least in part. That subsection provides that final orders of the court "shall include conditions the parents shall meet before the child is returned home . . . [and] a specific plan which shall include, but not be limited to, the services the child placing agency will provide to the child and the family." These latter provisions must be read with the provisions of RSA 169-C:19, I(a) and (b) (Supp. 1983) which authorize the court to award the custody of a neglected child to someone other than the child's parent. When, therefore, the final dispositional order allows custody of the child to remain with someone other than a parent who would otherwise be entitled to it, or transfers custody from such a parent, the order must include a statement of conditions on which the parent may regain custody and a plan of services to help the parent and the child. This result is consistent with the expressed purposes of applicable State and Federal law. See RSA 169-C:2 (Supp. 1983); Adoption Assistance and Child Welfare Act of 1980, Pub. L. No. 96-272, 94 Stat. 501–535. Since the district court's order included no statement of conditions or plan of services, the case must be remanded for revision of the order to include them.

While the statute requires the court to set conditions for regaining custody, as distinguished from rights of visitation, under the facts of this case it is difficult to imagine a condition for obtaining custody that would not require a showing that the child could accept the mother's visitation. Presumably, the conditions for return of custody would be some amelioration of the mother's mental condition, and

such changes in her behavior that the child could accept her presence during visitation without the violent reactions that led to the order terminating visitation. Needless to say, the district court is not required to allow experimental contact between mother and child without a showing that the mother's condition has so changed that visitation without harm to the child is at least reasonably possible.

Since the district court has already found "very little chance . . . [of] a safe and healthy reunification of the family," the court and the parties must now face the question whether it would be vain to set conditions and to order a plan of services. If it would be, then the division of welfare should consider the possibility of a petition to terminate parental rights under RSA chapter 170-C.

*Remanded.*

All concurred.