Merrimack
No. 84-591

*In re* MELISSA M.

February 27, 1986

*Geiger & Heiser*, of Penacook (*Nancy J. Geiger* on the brief and orally), as guardian ad litem for Melissa M.

*Sulloway Hollis & Soden*, of Concord (*Margaret H. Nelson* on the brief and orally), for the appellant, James M.

*Stephen E. Merrill,* attorney general (*Emily Gray Rice,* attorney, on the brief and orally), for the State.

BATCHELDER, J. James M. appeals from an order of the Superior Court (*Contas,* J.) transferring custody of his daughter, Melissa M., to the division of welfare. We affirm.

An investigation conducted in January 1984 by the division of welfare revealed evidence that Melissa M., then 4 1/2 years old, had been sexually abused by her father. In accordance with an *ex parte* order of the Concord District Court, the division removed Melissa from her father's custody and placed her in a temporary foster home. The Concord District Court held hearings pursuant to the Child Protection Act, RSA ch. 169-C (Supp. 1985), and entered an order finding that Melissa had been abused. James M. took a *de novo* appeal to the superior court. RSA 169-C:28 (Supp. 1985).

In the meantime, James M. had been indicted on three counts of aggravated felonious sexual assault involving Melissa and two other young girls not related to him. His attorney requested that the RSA chapter 169-C hearings before the superior court be delayed until completion of the criminal proceedings. In its pretrial order dated July 9, 1984, the Superior Court (*Pappagianis,* J.) denied this request. However, the order specified that "[a]ll statements and testimony of [James M.] during the hearing of the appeal and pending the court's decision on the appeal shall not be used directly or indirectly against him at his trial on the criminal charges with respect to Melissa."

The court held an adjudicatory hearing on September 27, 1984, and a dispositional hearing on November 8, 1984. James M. did not testify at these hearings. The superior court found that Melissa was an "[a]bused child" within the meaning of RSA 169-C:3, II (Supp. 1985), awarded permanent custody of Melissa to the division of welfare, and directed the division to file a petition for termination of parental rights in the probate court. The court also ordered counseling for the child for as long as necessary and directed that the father have no further contact with her.

On appeal, James M. raises three questions:

1. Did the trial court's refusal to continue the RSA chapter 169-C proceeding until the criminal prosecutions had been concluded impinge upon James M.'s privilege against self-incrimination?
2. Did the trial court impermissibly rely in its final order on evidence that it had previously ruled would not be considered?

 3. Did the trial court err in failing to establish in its final order a plan of conditions for the parent to meet in order to regain custody of Melissa as required by RSA 169-C:21, II (Supp. 1985)?

We answer each question in turn.

The appellant first contends that in failing to continue this proceeding until all criminal prosecutions had been concluded, the trial court "made it impossible" for him to testify in that it "required [him] to choose between attempting to reunify his family and avoiding the threat of self incrimination." The court's imposition of this choice, argues the appellant, impermissibly affected his constitutional privilege against self-incrimination. U.S. CONST. amend. V; N.H. CONST. pt. I, art. 15.

■ We disagree. James M. was neither compelled to testify nor penalized for failing to testify. There is no constitutional right to a stay of a civil proceeding pending disposition of a related criminal case. *Arthurs v. Stern*, 560 F.2d 477 (1st Cir. 1977), *cert. denied*, 434 U.S. 1034 (1978); *Attorney Grievance Commission of Maryland v. Unnamed Attorney*, 298 Md. 36, 467 A.2d 517 (1983). *See Baxter v. Palmigiano*, 425 U.S. 308, 316–20 (1976); *United States v. Kordel*, 397 U.S. 1 (1970). The law thus recognizes "the principle that protection of the public interest may often require proceeding simultaneously on two fronts, and that it would unduly compromise the public interest to force the government to choose between a civil and criminal course of action." *Mainelli v. United States*, 611 F. Supp. 606, 615 (D.R.I. 1985).

James M. eventually was convicted on one of the criminal charges; his case is presently on appeal. Had the superior court granted his request for a continuance, Melissa M. would still be awaiting a hearing. Such a result would contravene RSA chapter 169-C's emphasis on avoiding delay in child protection cases. *See* RSA 169-C:26 (Supp. 1985) (continuances may be granted only for good cause shown); RSA 169-C:28 (Supp. 1985) (appeals to superior court given priority on court calendar). Neither the State nor the Federal Constitution requires that recognition of Melissa's right to "the care, emotional security, guidance and control that will promote [her] best interest," RSA 169-C:2, I (Supp. 1985), be delayed pending resolution of the criminal prosecution of her father.

■ Moreover, the trial court's pretrial order granted James M. use immunity. This grant, although not constitutionally required, eliminated any chilling effect occasioned by the pending criminal proceedings. We hold that the trial court's denial of the appellant's

request for a continuance did not violate his privilege against self-incrimination.

The appellant next argues that the trial court in its final order improperly relied on evidence that it had previously ruled would not be considered. The court's pretrial order stated that a videotaped interview of Melissa would be received in evidence at the adjudicatory hearing, but that videotapes of interviews with the two other alleged victims would not be admissible. During the adjudicatory hearing the court repeatedly declined to consider testimony about James M.'s involvement with the other victims, and did not rely on any such evidence in its order of October 12, 1984.

Prior to the dispositional hearing, however, the guardian ad litem submitted a report to the court that discussed James M.'s involvement with the other victims and noted that he had been convicted on a felony charge involving one of them. In addition, the division of welfare submitted a social study that alluded to the two girls and to the appellant's criminal conviction. The trial court discussed these aspects of the report and the social study in its final order of November 13, 1984.

 The appellant contends that because the trial court limited the evidence it considered at the adjudicatory hearing, the court was bound to observe the same limitations in disposing of the case. The appellant misconstrues the purpose and scope of the dispositional phase of an RSA chapter 169-C proceeding. Just as a court "exercises wide discretion in choosing the sources and types of evidence on which to rely in imposing sentence" in a criminal case, *State v. Rodrigue*, 127 N.H. 496, 500, 506 A.2d 299, 303 (1985), a court may consider a multitude of factors and circumstances in determining a suitable disposition of a case brought under the Child Protection Act. The court is entitled to "the best information available" in deciding whether and when a child should be returned to its parents. *In re Brenda H.*, 119 N.H. 382, 386, 402 A.2d 169, 172 (1979). In the present case, evidence of the appellant's involvement with the other victims bore significantly on his fitness as a parent and underscored the severity of his propensity to abuse children. We hold that the trial court did not abuse its discretion in considering this evidence.

Finally, the appellant contends that the trial court erred in failing to specify in its final order conditions under which he could regain custody of his daughter. RSA 169-C:21, II (Supp. 1985) states that "[t]he [final] order of the court shall include conditions the parents shall meet before the child is returned home. The order shall also include a specific plan which shall include, but not be limited to, the

services the child placing agency will provide to the child and family."

In its final order the court thoroughly reviewed the history of this case. It noted that Melissa had been involved in some capacity with the division of welfare since her birth, and that before 1984 she had three times been placed temporarily in foster homes. The court emphasized Melissa's acute need for a stable and permanent home, as well as James M.'s demonstrated inability to function as a parent despite sustained attempts to help him. The court also stated that the division of welfare, the guardian ad litem, and Melissa's therapist each recommended that Melissa be placed in a foster home and have no contact with her father. It concluded:

> "[I]t does not seem possible for a reunification to take place of Melissa with her father now or at any point in the future, especially in light of the fact that there was an unsuccessful reunification previously.
>
> . . . [T]he New Hampshire Division of Welfare may proceed to file a termination of parental rights petition in the Merrimack County Probate Court."

As the trial court recognized, in the circumstances of this case "it would be vain to set conditions and to order a plan of services." *In re Adam E.*, 125 N.H. 368, 370, 480 A.2d 160, 161 (1984). We hold that RSA 169-C:21, II (Supp. 1985) does not require a court to attempt to specify conditions under which a parent and child may be reunited when no conditions exist under which reunification could safely occur.

*Affirmed.*

All concurred.