Hillsborough County Probate Court
No. 87-303

*In re* NOAH W. AND GABRIEL W.

October 31, 1988

*McWalters & Byk P.A.*, of Hillsborough (*Joseph J. Byk, Jr.*, on the brief and orally), for the plaintiff, Patty W.

*Clancy & O'Neill P.A.*, of Nashua (*Martha E. O'Neill* on the brief and orally), for the defendant, Oliver L.

SOUTER, J. The plaintiff appeals an order of the Hillsborough County Court of Probate (*Cloutier*, J.) dismissing her petition to terminate the parental rights of her former husband on the ground of sexual abuse of their minor children. The probate court ruled that a finding of sexual abuse by a district court under RSA

chapter 169-C (Supp. 1987) is a jurisdictional prerequisite to a probate court's order terminating parental rights under RSA 170-C:5, V (Supp. 1987). We affirm.

The statute provides in relevant part that

> "The petition [to terminate parental rights] may be granted [by the probate court] where the court finds that one or more of the following conditions exist: . . . V. The parent . . . caused or permitted another to cause severe sexual, physical, emotional, or mental abuse of the child. Subsequent to a finding of such abuse pursuant to RSA 169-C, the parent-child relationship may be terminated if return of the child to the parent would result in a substantial possibility of harm to the child. A substantial possibility of harm to the child shall be established by testimony on at least 2 of the following factors:
>
> (a) The parent's conduct toward the child has resulted in severe harm to the child.
>
> (b) The parent's conduct toward the child has continued despite the reasonable efforts of authorized agencies in obtaining or providing services for the parent to reduce or alleviate such conduct.
>
> (c) The parent's conduct has continued to occur either over a period of time, or many times, or to such a degree so as to indicate a pattern of behavior on the part of the parent which indicates a complete disregard for the child's health and welfare.
>
> (d) Such conduct is likely to continue with no change in parental behavior, attitude or actions."

*Id.* Proper construction of the phrase, "[s]ubsequent to a finding of such abuse pursuant to RSA 169-C," is crucial in resolving the issue of the probate court's authority to order termination of parental rights in this case, since the alleged acts of abuse have never been the subject of a complaint against the defendant former husband under RSA chapter 169-C, the Child Protection Act. The abuse, indeed, is said to have been committed outside New Hampshire.

The plaintiff argues that the phrase should not be construed as raising a jurisdictional limitation, but merely as providing a reference to the meaning of "severe sexual, physical, emotional, or mental abuse" as those terms are used in RSA 170-C:5, V. To this end, the plaintiff correctly points out that RSA chapter 170-C fails to define these terms, whereas the Child Protection Act does define some of them. *See* RSA 169-C:3, II (Supp. 1987) ("abused child"); XXVII-a ("sexual abuse").

There are, however, objections to this position, given the standard of statutory construction by reference to the plain meaning of the language employed, *see DeCato Brothers, Inc. v. Westinghouse Credit Corp.*, 129 N.H. 504, 508, 529 A.2d 952, 954 (1987), considering the statute as a whole, *see Theresa S. v. Sup't YDC*, 126 N.H. 53, 55, 489 A.2d 592, 593 (1985). The words "pursuant to" are commonly used to describe some action that has been or may be taken, as exemplified in the first entry given in Webster's Third New International Dictionary 1848 (1961), which defines the phrase to mean "in the course of carrying out." Thus, to speak of a finding pursuant to a statute is most readily understood to refer to a conclusion reached after following a process of fact-finding or adjudication prescribed by the statute. In this primary sense, then, the term under consideration may be understood to refer to an adjudication made under the authority of RSA chapter 169-C. While the term has secondary senses, *e.g.*, "according to," *id.*, which might lend some pale color to the interpretation for which the plaintiff argues, it is still the case that using "pursuant to" would have been a very inexact way of trying to say "as defined in," if the latter had been all the legislature actually intended to mean.

But even apart from this definitional difficulty, the full phrase "[s]ubsequent to a finding of . . . abuse pursuant to RSA 169-C" is more readily understood as referring to a proceeding distinct from and held prior to the proceeding to terminate parental rights. This is apparent on observing that one of the four statutory factors that the probate court may consider in determining whether parental rights should be terminated is evidence that the parent's abusive behavior toward the child has continued, "despite the reasonable efforts of authorized agencies . . . to reduce or alleviate such conduct." RSA 170-C:5, V(b). Since nothing in RSA chapter 170-C suggests that a termination proceeding under that chapter might appropriately be recessed for a period of time during which a welfare agency could attempt to treat and reform the offending parent, the legislature probably assumed that official efforts at alleviation would have been made prior to the filing of a petition under RSA 170-C:3 (Supp. 1987). And because the intervention of "authorized agencies" for this purpose would be highly unlikely in the absence of a court order, it is probable that the legislature also assumed that some prior adjudication of abuse would have occurred, an adjudication that could only occur in a district court, which has exclusive original jurisdiction over charges of child abuse and neglect, as such, under RSA 169-C:4, I (Supp. 1987).

Consistently with this assumption, RSA chapter 169-C provides both a mechanism and a mandate to encourage the reform of an offending parent. One of the legislature's stated objectives in enacting that statute was the preservation of family unity, RSA 169-C:2, I(b) (Supp. 1987), notwithstanding the circumstances of abuse and neglect that might call for the law's application. Given the significance of the constitutionally protected parental rights implicated by the phrase "family unity," *see State v. Robert H.*_____, 118 N.H. 713, 716, 393 A.2d 1387, 1389 (1978), RSA 169-C:21, II (Supp. 1987) imposes responsibility on a district court to plan for the reunification of families that have been split by dispositional orders in abuse cases, where there is any practical hope of parental reformation. *See In re Adam E.*, 125 N.H. 368, 370, 480 A.2d 160, 161 (1984). It is entirely consistent with the philosophy underlying these provisions of RSA chapter 169-C to require exhaustion of the remedial opportunities that they extend, before empowering a probate court to sever the parental relationship finally, under RSA chapter 170-C.

We therefore conclude that the probate court was correct in reading RSA 170-C:5, V (Supp. 1987) to require a district court finding as a predicate to probate jurisdiction. Whether on the facts of this case a district court might have had or have obtained jurisdiction to adjudicate a petition charging abuse raises questions that are not before us, and we intimate no opinions about their answers.

*Affirmed.*

All concurred.