Carroll
No. 2004-595

THE STATE OF NEW HAMPSHIRE

v.

MICHAEL J. SMITH

Argued: May 11, 2006
Opinion Issued: August 23, 2006

*Kelly A. Ayotte*, attorney general (*Edith L. Pacillo*, attorney, on the memorandum of law and orally), for the State.

*Douglas, Leonard & Garvey, P.C.*, of Concord (*Richard J. Lehmann* on the brief and orally), for the defendant.

HICKS, J. The defendant, Michael J. Smith, appeals his conviction of five counts of possession of a controlled substance, *see* RSA 318-B:2, I (2004), following a bench trial in Superior Court (*O'Neill*, J.). We affirm.

The record supports the following relevant facts. On December 10, 2002, Ossipee Police Officers Shackford and King were driving on Route 113 in Madison when they came upon a car operating erratically. Shackford

testified that the car was swerving all over the road. Because the officers were outside of their jurisdiction, they radioed for a sheriff's deputy or a state trooper to stop the vehicle. The officers continued to follow the vehicle. At the intersection of Route 113 and Route 41, the driver drove through the stop sign and stopped in the middle of the road before turning right onto Route 41. The vehicle continued weaving all over the road. It then crossed the centerline of Route 41 and an oncoming car was forced to swerve out of its way in order to avoid a head-on collision. At that point, King activated his blue lights and stopped the vehicle.

Shackford approached the vehicle and recognized the defendant, whom he had known for many years. Shackford had a brief conversation with the defendant and then asked him to wait until a sheriff's deputy or state trooper arrived. A state trooper arrived about five to ten minutes after the vehicle had been stopped. The state trooper subsequently arrested the defendant for driving while intoxicated. During booking on that charge he was found to be in possession of prescription medications. He was indicted on five felony counts of illegal possession of a controlled drug in violation of RSA 318-B:2.

At the time of the incident, the Ossipee Police Department did not have a mutual aid agreement with the Town of Madison. *Cf.* RSA 105:13 (2001) (granting police officers authority to render assistance in town with which their police department has mutual aid agreement). Based upon the lack of a mutual aid agreement, the defendant moved to suppress all evidence resulting from the stop. The trial court denied the defendant's motion to suppress and a subsequent motion to reconsider. The trial court determined that the officers "were authorized under the exigent circumstances exception to effectuate a stop of the defendant's vehicle even though they did not have a mutual aid agreement with the Town of Madison." The defendant was found guilty of five counts of possession of a controlled substance. This appeal followed.

On appeal, the defendant argues that the trial court erred as a matter of statutory law in failing to suppress the evidence obtained as a result of the unauthorized, extraterritorial seizure. In addition, the defendant contends that the seizure violated his rights under the Fourth and Fourteenth Amendments of the United States Constitution, and Part I, Article 19 of the New Hampshire Constitution.

When reviewing a trial court's ruling on a motion to suppress, we accept the trial court's factual findings unless they are unsupported by the record or clearly erroneous. *See State v. Johnston*, 150 N.H. 448, 451 (2004). We review the trial court's legal conclusions *de novo*. *See id.*

The defendant argues that the trial court erred in denying his motion to suppress because the exclusionary rule should apply when a police officer violates RSA 105:4.

RSA 105:4 (2001) provides:

> The selectmen, or superintendent under their direction, may employ police officers in the detection and conviction of criminals and the prevention of crime in their town, and in the preservation of order on public or special occasions.

The defendant argues that RSA 105:4 is part of a statutory scheme defining the territorial jurisdiction of the various law enforcement officers. He points out that RSA 106-B:15 (2001), a statute defining the jurisdiction of the New Hampshire State Police, provides that evidence in a criminal case shall not be suppressed or excluded when a state trooper fails to comply with jurisdictional limits of the statute, so long as the trooper acted in good faith. The defendant then argues that the lack of such a provision in RSA 105:4 signifies legislative intent that suppression should be required for its violation by town police officers. We disagree.

■ We will assume, without deciding, that a violation of RSA 105:4 occurred. To determine whether suppression of evidence obtained in violation of a State statute is an appropriate remedy, we first analyze the statute to determine whether the legislature intended to authorize such a remedy. *See State v. Flynn*, 123 N.H. 457, 463-65 (1983). We are the final arbiter of the intent of the legislature as expressed in the words of a statute. *State v. Sullivan*, 144 N.H. 541, 543 (1999). Moreover, it is well established that when interpreting a statute we will not consider what the legislature might have said, or add words that it did not see fit to include. *Monahan-Fortin Properties v. Town of Hudson*, 148 N.H. 769, 771 (2002). The defendant asks us to do just that. There is no language in RSA chapter 105 to indicate that the legislature intended to authorize suppression as a remedy. Arguably, the statute's silence creates an ambiguity as to whether suppression is the remedy. When construing an ambiguous statute, we look to legislative intent and the objectives of the legislation. *Flynn*, 123 N.H. at 464. As the defendant notes, while the legislature was silent as to remedies under RSA 105:4, it expressly provided that suppression should *not* be an available remedy in the analogous situation of a state trooper's failure to comply with jurisdictional limits while acting in good faith. We have been presented with no good reason for concluding that the legislature intended by its silence to provide for a different result when a town officer acts outside of his jurisdictional

limit. Accordingly, we affirm the trial court's statutory construction analysis.

Next, the defendant contends that the seizure violated his rights under the Fourth and Fourteenth Amendments of the United States Constitution, and Part I, Article 19 of the New Hampshire Constitution. We first examine this claim under the State Constitution, relying upon federal case law only for guidance. *State v. Ball,* 124 N.H. 226, 231-33 (1983).

The defendant argues that the seizure violated his rights under Part I, Article 19 of the New Hampshire Constitution. Specifically, he claims that pursuant to Part I, Article 19, only a civil officer may obtain a warrant, and because the officers were acting outside of their jurisdiction, they could not have obtained a warrant. The trial court found that the exigent circumstance exception applied to this case. We affirm on alternate grounds, concluding that the stop was a valid investigatory stop. A review of the record reveals that no warrant was needed and the stop was constitutionally valid.

 The exclusionary rule is a logical and necessary corollary to achieve the purposes for which prohibitions against unreasonable searches and seizures were constitutionalized. *State v. Canelo,* 139 N.H. 376, 386 (1995). Suppression is not mandated, however, when one's constitutional rights are not violated. Here, the Ossipee police officers made a constitutionally valid traffic stop. *See State v. Maya,* 126 N.H. 590, 595 (1985); *see also State v. Schneider,* 124 N.H. 242, 243 (1983). An officer may make an investigatory stop when the officer has a reasonable suspicion, based upon specific articulable facts that the person stopped is engaged in criminal activity. *State v. Szczerbiak,* 148 N.H. 352, 355 (2002). An investigatory stop must be narrowly tailored and last no longer than necessary to effectuate its purpose. *Maya,* 126 N.H. at 595.

 The defendant does not argue that the officers lacked reasonable suspicion for the stop or that they lacked probable cause. The record reveals that the officers witnessed the defendant cross the yellow line, drive completely off the road, run a stop sign, and nearly collide with an oncoming vehicle. Shackford testified that no more than ten minutes elapsed from the time he and King detained the defendant until the state trooper arrived. Thus, the stop lasted no longer than necessary when judged in terms of its purpose. *See Maya,* 126 N.H. at 595 (officer had reasonable suspicion and detained suspect long enough to preserve status quo).

Other jurisdictions have reached similar conclusions in cases analogous to this one. For instance, in *State v. Mangum,* 226 S.E.2d 852, 854 (N.C.

Ct. App. 1976), the defendant was arrested approximately three miles outside of the officer's territorial jurisdiction, and the defendant moved to suppress all evidence obtained as a result of the arrest. The trial court denied the defendant's motion, and he subsequently appealed his conviction. *Id.* On appeal, the North Carolina Court of Appeals held that a technical violation of the jurisdiction statute did not automatically require exclusion of evidence. *Id.* The court ruled that the Fourth Amendment protected against unreasonable searches and seizures, and that an arrest was constitutionally valid if probable cause existed. *Id.* The court concluded that the exclusionary rule was inapplicable because probable cause existed. *Id.*; *see also State v. Melvin*, 281 S.E.2d 97 (N.C. Ct. App. 1981), *cert. denied*, 292 S.E.2d 578 (N.C. 1982). Similarly, in *People v. Hamilton*, 666 P.2d 152 (Colo. 1983), the Colorado Supreme Court held that evidence should only be suppressed if the unauthorized arrest violated the State or Federal Constitution. Suppression of the evidence seized during the arrest was not necessary because probable cause existed. *Id.* at 156-57. We conclude that the stop did not violate the State Constitution.

The defendant contends that the seizure violated his rights under the Fourth and Fourteenth Amendments of the United States Constitution. Specifically, he argues that the "federal circuits are split on the question of whether an arrest is *per se* unreasonable when an officer acts outside of his or her jurisdiction while not in hot pursuit." *See Santoni v. Potter*, 369 F.3d 594 (1st Cir. 2004). He cites federal cases supporting his argument. *See Ross v. Neff*, 905 F.2d 1349, 1353-54 (10th Cir. 1990) (arrest executed outside of the officer's jurisdiction violated the Fourth Amendment; absent exigent circumstances, such an arrest is presumptively unreasonable); *United States v. Trigg*, 878 F.2d 1037, 1041 (7th Cir. 1989) (custodial arrest is constitutional if arresting officer had probable cause and authority under state or municipal law to effect a custodial arrest for the particular offense); *Malone v. County of Suffolk*, 968 F.2d 1480, 1482-83 (2d Cir. 1992) (whether officers have valid authority to arrest pursuant to State law affects constitutionality of the arrest). We are persuaded, however, by the federal cases that have held that an arrest by state officers acting beyond the scope of their authority is reasonable in "the Fourth Amendment sense if it is based on probable cause." *United States v. Bell*, 54 F.3d 502, 504 (8th Cir. 1995); *see also Fields v. City of South Houston, Tex.*, 922 F.2d 1183, 1189 (5th Cir. 1991) (holding that there is no constitutional violation unless the arresting officer lacked probable cause); *Street v. Surdyka*, 492 F.2d 368, 372-73 (4th Cir. 1974).

■ Based upon the same reasoning, we conclude that because the Ossipee police had reasonable suspicion, indeed, probable cause, for the

118

stop, there was no violation of the Federal Constitution. Accordingly, we find no error in the trial court's denial of the motion to suppress.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.