Manchester District Court
No. 2005-212

IN RE JUVENILE 2005-212

Argued: October 3, 2006
Opinion Issued: January 26, 2007

*Paula J. Werme*, of Boscawen, by brief and orally, for the petitioner.

*Maryellen Biletch*, of Manchester, by brief and orally, for the juvenile.

*Kelly A. Ayotte*, attorney general (*Karen A. Schlitzer*, assistant attorney general, on the memorandum of law), for the New Hampshire Department of Health and Human Services.

*I. Kristine Bergstrom*, of Concord, by brief and orally, for the guardian ad litem.

HICKS, J. The petitioner, the mother of Juvenile 2005-212, appeals an order of the Trial Court (*Emery*, J.) dismissing her child in need of services (CHINS) petition against the juvenile. *See* RSA ch. 169-D (2002 & Supp. 2006). We vacate and remand.

The following facts were found by the trial court or appear in the record before us. In September 2004, the petitioner filed a CHINS petition against her son, who was then ten years old. She alleged that her son had been diagnosed with pervasive developmental disorder/childhood disintegrative disorder, attention deficit disorder (ADD), depression and bi-polar disorder. The petitioner also alleged that the juvenile had "been leaving the house in the middle of the night, stolen and used credit cards from me, assaulted teachers, his brothers and me, other children in the neighborhood" and at his school and the Philbrook Center. The petitioner alleged three "specific acts of violence and failure to obey the reasonable commands of [the petitioner] and others responsible for his care" in which the juvenile: (1) "kicked his teacher and began to spit, requiring physical restraint"; (2) hit his brother, close-fisted, in the head; and (3) put his brother in a headlock and punched his head near the temple over a dozen times.

The juvenile's attorney requested a hearing to determine whether the juvenile was competent to commit the acts alleged in the CHINS petition. *See* RSA 169-D:18-a (2002). John V. Cabibi, Ph.D, performed two evaluations, submitted a report to the court, and testified at the adjudicatory hearing. The court also considered previous testimony of the juvenile's treating physician at the Philbrook Center.

The trial court found:

> [The juvenile] suffers from ADD. He is developmentally delayed and has a limited vocabulary. [He] has an intelligence range of mild mental retardation. He is impulsive . . . [and] is prone to act out instead of speaking about his emotions. [He] is deficit [*sic*] in sequential processing and he has difficulty discerning relevant from irrelevant data.

The court noted Dr. Cabibi's opinion that the juvenile "was not competent to commit the acts alleged in the [CHINS] petition." The trial court made the same finding and dismissed the case.

The trial judge aptly observed that the statute fails to specify a course of action following a finding of incompetence. After reviewing the available legislative history, the court concluded that it did not "have authority to provide [CHINS] services to [the juvenile]" and that services must be provided by the mental health system.

■ We first address the State's contention that this appeal is moot. "[T]he question of mootness is one of convenience and discretion and is not subject to hard-and-fast rules. Generally, however, a matter is moot when it no longer presents a justiciable controversy because issues involved have become academic or dead." *Appeal of Hinsdale Fed. of Teachers*, 133 N.H. 272, 276 (1990) (quotations and citation omitted). The State argues:

Although it is not a part of the record, in the interest of full disclosure to the Court, DHHS has been providing services to the child on a voluntary basis since July of 2005 at no cost to the mother. DHHS has indicated to both the mother and her counsel that it will continue to provide services in this case until such time as the child's therapists and providers indicate that he can be transitioned back to his biological family. The issue is, therefore moot.

■ However well-intentioned, DHHS's provision of services is not the equivalent of a court-ordered placement. This "voluntary" arrangement is presumably unenforceable and subject to revocation. Thus, the juvenile's entitlement to services as long as he is in need of them and otherwise statutorily eligible has not "already been resolved." *Id.* This appeal is therefore not moot.

On appeal, the petitioner argues that "[n]othing in the statute prohibits a finding against the child or placement of a child in a treatment facility if he is found 'incompetent to commit the acts alleged.'" "In matters of statutory interpretation, we are the final arbiter of legislative intent as expressed in the words of the statute considered as a whole." *Lacasse v. Spaulding Youth Center*, 154 N.H. 246, 250 (2006) (quotation omitted).

When construing a statute, we first examine its language and, where possible, we ascribe the plain and ordinary meaning to the words used. We must keep in mind the intent of the legislation, which is determined by examining the construction of the statute as a whole, and not simply by examining isolated words and phrases found therein.

*Thayer v. Town of Tilton*, 151 N.H. 483, 486-87 (2004) (citation omitted). If the statute is ambiguous, we will "consider legislative history to aid our

analysis." *AIMCO Props. v. Dziewisz*, 152 N.H. 587, 590 (2005). We will not, however, "consider what the legislature might have said, or add words that it did not see fit to include." *State v. Smith*, 154 N.H. 113, 115, 908 A.2d 786, 788 (2006).

RSA 169-D:18-a provides, in relevant part:

> I. At any point during the proceedings, the court may, either on its own motion or that of any of the parties, order the child to submit to a mental health evaluation for the purpose of determining whether the child is competent to have committed the offenses or acts alleged in the petition. The evaluation shall be completed within 60 days of the date of such order and shall be conducted by an agency other than the Philbrook center which is approved by the commissioner of health and human services, or conducted by a psychologist licensed in New Hampshire or a qualified psychiatrist, or by the Philbrook center only upon receiving prior approval for admission of the child for such evaluation by the commissioner of the department of health and human services. The evaluation shall be submitted to the court in writing prior to the hearing on the merits.

RSA 169-D:18-a, I. The statute's silence as to the consequences of a finding of lack of competence arguably creates an ambiguity. *See Smith*, 154 N.H. at 115. Thus, we cannot say that the trial court erred by consulting legislative history.

The court cited testimony of Representative William McCain, sponsor of the bill that produced RSA 169-D:18-a, who stated, in part:

> What we have heard from the Division [for Children and Youth Services] was that situations where they were treating children who really didn't belong in the CHINS program, in some cases, and what we are trying to do is to get that out of there. They should have been under a mental health program, not under a CHINS program. We have added competency in here to say that a child has to be able to understand what is right and wrong in order for you to help supervise them and get them through this period. If they don't understand, it's not going to work. And maybe those children should be in a mental health situation and that is what we are saying. Put them where they belong.

Thus, Representative McCain's apparent concern was that some children in the CHINS system are not helped by the program and would be more appropriately served by the mental health system.

We acknowledge that Representative McCain's comments evince an intent to "get [some children] out of" the CHINS system. However, "[t]he question is what is the effect and meaning of the language of the act finally ratified and adopted by the legislature." *Pollard v. Gregg*, 77 N.H. 190, 194 (1914), *superseded by statute on other grounds.*

■ We do not discern, in the final legislative enactment, an intent to treat competence as a jurisdictional requirement for, or a predicate to, adjudication of a juvenile as a CHINS. If the legislature had intended a finding of incompetence to be of jurisdictional magnitude, we believe it would have said so. *Cf. id.* at 198 ("If such had been the purpose, it would have been an easy matter to use language unequivocally expressive of that purpose."). To infer a mandate of dismissal upon a finding of incompetence would require us to "add words [to the statute] that [the legislature] did not see fit to include," a task we will not undertake. *Smith*, 154 N.H. at 115.

Our determination that competence is not a jurisdictional prerequisite to a CHINS adjudication raises the question of what role a competency evaluation does play in a CHINS proceeding. We presume, of course, that the legislature did not enact RSA 169-D:18-a as a superfluous provision. *Cf. Silva v. Botsch*, 120 N.H. 600, 602 (1980) (construing a statute to render some provisions superfluous "would not be consistent with legislative intent").

We first "examin[e] the construction of the statute as a whole." *Thayer*, 151 N.H. at 486. CHINS cases "begin with an adjudicatory hearing, in which the court determines whether the child is in need of services." *In re Lisa G.*, 127 N.H. 585, 590 (1986). This stage of the proceeding may be referred to as the "adjudicatory phase." *Id.*

> The next stage of the proceeding, if the court finds that the child is in need of services, is the dispositional phase. The court determines the most appropriate and least restrictive disposition for the child on the basis of the facts, the investigation report made by the probation department or other appropriate agency . . . , and the recommendations of the parties and counsel.

*Id.*

RSA 169-D:18-a is unclear as to which phase it applies. The last sentence of section I directs that the competence evaluation "be submitted to the court in writing prior to the hearing on the merits," or in other words, the adjudicatory hearing. RSA 169-D:18-a, I. This seems to imply that the evaluation is to be used in the adjudicatory phase. On the other hand, the first sentence of section I provides that the court may order an evaluation

"[a]t any point during the proceedings," *id.*, which seems to imply that the evaluation may be used at either stage in the case.

We conclude, absent further clarification from the legislature, that the evaluation may be used, in the sound discretion of the trial judge, in either phase of the proceeding: in the adjudicatory phase, to determine whether the juvenile meets the definition of a CHINS; and/or in the dispositional phase, to determine the appropriate placement for the juvenile. As the trial court appears to have interpreted the CHINS statute to *require* dismissal upon a finding of incompetence, we vacate and remand for further proceedings not inconsistent with this opinion.

Finally, the juvenile argues that due process requires that before he can be adjudicated a CHINS, he must have a sufficient ability to consult with his lawyer with a reasonable degree of understanding and have a rational and factual understanding of the proceedings against him. This issue is not properly before us. It was not raised by the petitioner in her notice of appeal and the juvenile did not file a cross-appeal. *Cf. Simpson v. Young,* 153 N.H. 471, 473 (2006) (appellee was not entitled to review of trial court order where he failed to appeal the order or file a cross-appeal). Accordingly, we decline to address this argument. *Cf. id.*

*Vacated and remanded.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.