Strafford County Probate Court
No. 2007-084

## IN RE JUVENILE 2007-084

Argued: June 20, 2007
Opinion Issued: September 20, 2007

*Kelly A. Ayotte*, attorney general (*Glenn A. Perlow*, assistant attorney general, on the memorandum of law and orally), for the New Hampshire Division for Children, Youth and Families.

*Nancy K. Quinlan*, of Dover, on the brief and orally, for the respondent.

GALWAY, J. The respondent father appeals an order of the Strafford County Probate Court (*Cassavechia*, J.) terminating his parental rights over his son, the juvenile in this case, pursuant to RSA 170-C:5, III (2002). We vacate and remand.

The probate court found the following facts, which the parties do not dispute. On November 27, 2003, the New Hampshire Division for Children, Youth and Families (DCYF) filed a petition with the Rochester District Court alleging that the juvenile's mother had neglected him. At the time, the respondent resided in Florida. The same day, DCYF filed a second petition against the juvenile's mother alleging abuse and neglect of the juvenile's half-brother. The father of the juvenile's half-brother has voluntarily relinquished his parental rights and is not a party to this matter.

On December 23, 2003, the mother signed a consent agreement in which she stipulated to a finding of neglect relative to both children. Following the entry of this consent agreement, the district court held a dispositional hearing on February 5, 2004, during which it adopted the proposed case plan submitted by DCYF outlining the requirements for the mother to correct the conditions leading to the finding of neglect. One requirement was that the mother have no contact with the respondent. Some time between the dispositional hearing and a case review hearing in May 2004, the respondent returned from Florida. Also, at some point between May 2004 and July 26, 2004, the respondent moved into his parents' home, where the mother and children were already residing.

On July 9, 2004, an incident of domestic violence between the mother and the respondent occurred in the presence of the children and was reported to DCYF. Based upon the domestic violence incident and the mother's violation of the no-contact order, DCYF requested that the children be removed from the home. On July 26, 2004, the district court granted DCYF's request and the children were removed and placed in foster care.

On July 29, 2004, DCYF filed a neglect petition against the respondent. An adjudicatory hearing was held on September 23, 2004, at which the respondent stipulated to a finding of neglect resulting from domestic violence perpetrated in the children's home. On October 25, 2004, a dispositional hearing was held at which the district court adopted a case plan outlining various requirements for the respondent to fulfill. From that point until July 21, 2005, various hearings were held in the district court relating to one or both of the parents to assess their compliance with the requirements set out for the correction of the conditions leading to the neglect findings.

On July 21, 2005, DCYF filed a motion to change the case plans of both the mother and the respondent from reunification to termination because, it alleged, neither parent had meaningfully corrected the conditions leading to the findings of neglect. On August 18, 2005, the district court held a permanency hearing, and on August 29 and September 2, 2005, issued orders ending the reunification efforts, ending DCYF's obligation to aid in reunification, and ordering DCYF to file petitions in the probate court for the termination of parental rights.

DCYF filed termination petitions against both parents in Strafford County Probate Court, which held a hearing on September 11, 12, and 13, 2006. The probate court issued an order dated November 7, 2006, terminating the parental rights of the mother over both children, and the parental rights of the respondent over the juvenile. Both parents appealed. Following briefing, we affirmed the probate court's decision relative to the mother by an order dated May 29, 2007.

On appeal, the respondent contends that he was not given the statutorily required twelve months to correct the conditions leading to the finding of neglect. Additionally, he contends that the probate court's determinations that he failed to correct the conditions leading to the finding of neglect, that DCYF made reasonable efforts to reunify him with his child, and that terminating his parental rights was in the best interest of the child, were unsupported by the evidence.

Regarding the respondent's statutory argument, he argues that RSA 170-C:5, III requires that he have a minimum of twelve months to correct the conditions leading to the finding of neglect. Because he did not have twelve months, he contends it was error for the probate court to terminate his parental rights. DCYF responds that either the respondent had the required amount of time or, if not, the full twelve months was not required in this case.

■ "In matters of statutory interpretation, we are the final arbiter of legislative intent as expressed in the words of the statute considered as a whole." *In re Juvenile 2005-212*, 154 N.H. 763, 765 (2007) (quotation omitted). When construing a statute, we first examine its language and, where possible, we ascribe the plain and ordinary meaning to the words used. *Id.* RSA 170-C:5, III provides that a petition to terminate parental rights may be granted if: "The parents, subsequent to a finding of child neglect or abuse under RSA 169-C, have failed to correct the conditions leading to such a finding within 12 months of the finding despite reasonable efforts under the direction of the district court to rectify the conditions." Because the statute requires that the conditions be corrected within twelve months, it cannot be determined whether the conditions have

been corrected until twelve months have elapsed. Therefore, under the language of the statute, before a petition to terminate may be granted, the probate court must determine whether the parents have failed, over the span of twelve months, to correct the conditions leading to the finding of abuse or neglect.

Upon initial evaluation, the probate court's order was unclear as to which dates it considered when deciding whether to terminate the respondent's parental rights. Following a request for clarification from this court, the probate court confirmed that "[t]he statement at page 8 [of the probate court order] to the effect that the father's case 'was approximately three weeks shy of the twelve-month point' is correct (adjudication date September 23, 2004 to permanency hearing August 18, 2005 . . .)." Thus, the probate court admits that it considered only the approximately eleven months between the respondent's adjudication of neglect and his permanency hearing. Because the statute requires that the probate court review the respondent's behavior over a period of at least twelve months, and because it did not do so, the probate court erred.

Despite our holding that the probate court erred by failing to review the respondent's behavior over twelve months as required by RSA 170-C:5, III, DCYF argues that the probate court's order should be upheld. First, while RSA 170-C:5, III states that the time period for calculating the twelve months begins "subsequent to a finding of child neglect or abuse under RSA 169-C," DCYF contends, relying upon *In re Tricia H.*, 126 N.H. 418 (1985), that the probate court could have reviewed the respondent's behavior from the time the respondent was made aware of the finding of neglect against the mother. Because, however, the probate court confirmed that it reviewed the respondent's behavior beginning with his stipulation to a finding of neglect in September 2004, it is irrelevant whether the probate court could have reviewed the respondent's behavior from some other point, and we express no opinion as to the applicability of *Tricia H.* to this case.

■ DCYF also contends, citing *In re Melissa M.*, 127 N.H. 710 (1986), that it was not necessary for the probate court to review the respondent's behavior over the full twelve months. However, *Melissa M.* is distinguishable. The statute at issue in *Melissa M.* concerned the reunification requirements of a final order of the district court. Here, the statute is concerned with the proper timeframe for the probate court to consider in making its determination about terminating parental rights. The relevant statutory issues are sufficiently distinct that *Melissa M.* has no bearing on our decision here. As we have held, RSA 170-C:5, III requires the probate court to review a parent's conduct over twelve

months, and neither this court nor the probate court is in the position to deny any parent, including the respondent, that which is granted by the legislature.

For the reasons stated, we vacate the order of the probate court terminating the respondent's parental rights and remand the matter for proceedings consistent with this opinion. Because we have vacated the order of the probate court on the ground stated, we do not address the other arguments raised by the respondent.

*Vacated and remanded.*

DALIANIS, DUGGAN and HICKS, JJ., concurred; BRODERICK, C.J., concurred specially.

BRODERICK, C.J., concurring specially. I concur with the majority that RSA 170-C:5, III (2002) requires that, before the probate court may grant a petition to terminate parental rights based upon a finding of child neglect or abuse under RSA chapter 169-C, the parents must have failed to correct the conditions leading to such a finding within twelve months of the finding, despite reasonable efforts under the direction of the district court to rectify the conditions. I also concur with the majority's statement that "[b]ecause the statute requires that the conditions be corrected within twelve months, it cannot be determined whether the conditions have been corrected until twelve months have elapsed." I write separately, first, because I remain uncertain as to which dates the probate court considered when it terminated the father's parental rights.

As noted by the majority, we requested clarification from the probate court as to which dates it considered in making its determination. It is clear to me that the probate court began with the date of September 23, 2004, the date on which the Rochester District Court held an adjudicatory hearing and the father stipulated to a finding of neglect. What remains unclear to me, however, is the date on which the probate court ended its review of the father's efforts to correct the conditions leading to the finding of neglect. Based upon the probate court's clarification of an inconsistency in the wording of its order, the majority states that "the probate court admits that it considered" only the period between September 23, 2004, and August 18, 2005, the date of the permanency hearing. I am not so certain of that.

The probate court's response to our request for clarification also noted that the district court order subsequent to the permanency hearing was issued on August 29, 2005, and was supplemented with a second order issued on September 2, 2005. In addition, this court's request for clarification noted that the probate court's order granting the petition for

termination was issued November 7, 2006, "approximately 26 months after the father signed a consent agreement." Absent a definitive statement from the probate court regarding the end date of its review, I am uncertain if the probate court review ended on August 18, August 29, or September 2, 2005, all of which were before the statutorily required twelve-month period, or on November 7, 2006, or some other date subsequent to September 23, 2005, which was after the statutory requirement. Consequently, I concur with the majority's decision to remand this case to the probate court to decide whether the father failed over a period of at least twelve months to correct the conditions leading to the finding of neglect. Because I am not certain that the probate court has not already done that, however, I am not prepared at this point to say that the probate court erred.

In addition, I write separately because I disagree with the majority that *In re Melissa M.*, 127 N.H. 710 (1986), has no bearing on a decision in this case. The majority states that "DCYF also contends, citing [*Melissa M.*], that it was not necessary for the probate court to review the [father's] behavior over the full twelve months." I do not believe that is an accurate portrayal of DCYF's argument. DCYF's memorandum of law states:

> The Probate Court reasoned that even if the District Court were deemed not to have provided a full 12 months for [the father] to correct the conditions of neglect, under [*Melissa M.*], it is not required to do so in every case, and therefore termination may be ordered in any event. While *Melissa M.* was not decided in the context of a termination proceeding under RSA 170-C, the Probate Court's interpretation is nevertheless sound.

Contrary to the majority, I believe that DCYF has argued that if the twelve-month period for probate court review (required by RSA 170-C:5, III) is met, it is not dispositive if the district court efforts did not continue for a co-terminus twelve-month period.

In *Melissa M.*, subsequent to the division of welfare's investigation revealing that the father had sexually abused his daughter, the district court, pursuant to RSA chapter 169-C, entered a finding that Melissa had been abused. On *de novo* appeal, the superior court found that Melissa was an "abused child" within the meaning of RSA 169-C:3, II, awarded permanent custody of Melissa to the division, and directed the division to file a petition for termination of parental rights in the probate court. *Melissa M.*, 127 N.H. at 711. On appeal to this court, the father contended that the trial court had erred in failing to establish a plan of conditions for him to meet in order to regain custody of the child, as required by RSA 169-C:21, II. *Id.* at 712. Notwithstanding the language of RSA 169-C:21, II,

we disagreed, and held that the statute "does not require a court to attempt to specify conditions under which a parent and child may be reunited when no conditions exist under which reunification could safely occur." *Id.* at 714.

In the instant case, the probate court recognized that *Melissa M.* related to a neglect case under RSA chapter 169-C, and not a termination of parental rights case under RSA chapter 170-C. The probate court continued:

> [T]he court cannot conceive of any logical reason why the [*Melissa M.*] ruling would not have equal application to a failure to correct case brought under RSA 170-C:5, III, as here, since there can be no failure to correct grounds proved unless there is a predicate neglect case. To conclude otherwise would lead to the anomalous result that where the district court properly ruled no effort toward reunification was necessary under any conditions no termination could be ordered in furtherance of the child's permanency interests via adoption.

I find the reasoning of the probate court to be persuasive. While I agree with the majority that *Melissa M.* is "distinguishable" as the "statute at issue in *Melissa M.* concerned the reunification requirements of a final order of the district court," that statute is referenced in RSA 170-C:5, III, and a finding by the district court under the statute serves as the prerequisite for every petition for termination under RSA 170-C:5, III. Further, *Melissa M.* forms much of the foundation for both the probate court's order and DCYF's argument. Given our remand of this case, the specific applicability of *Melissa M.* need not be decided here, yet the issue may well arise in the probate court. Unlike the majority, I am not prepared at this point to decide that *Melissa M.* has no bearing here.